[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-11706
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20626-JEM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JARVIS WILLIAMS,
a.k.a. Fat Twin,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 6, 2017)

Before JORDAN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Jarvis Williams appeals his concurrent 63-month sentences, imposed after he pled guilty to conspiracy to possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).  He contends that his sentences are procedurally unreasonable.  He argues that the district court clearly erred by basing his sentences on quantities of controlled substances that his co-conspirators sold while he was in custody.  He also argues that the district court clearly erred by applying a two-level firearm enhancement.

I.

When reviewing a sentence, we ensure that the district court did not commit a significant procedural error such as improperly calculating the guideline range or selecting a sentence based on clearly erroneous facts.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  "We review for clear error a district court's determination of the drug quantity attributable to a defendant."  *United States v. Azmat*, 805 F.3d 1018, 1046 (11th Cir. 2015), *cert. denied*, 136 S. Ct. 2012 (2016).  A finding is

clearly erroneous if we are "left with a definite and firm conviction that a mistake has been committed." *United States v. Wilson*, 788 F.3d 1298, 1317 (11th Cir.), *cert. denied*, 136 S. Ct. 518 (2015).

Arguments raised for the first time on appeal, if they are reviewed at all, are reviewed for plain error. *See United States v. Gonzalez*, 834 F.3d 1206, 1217 (11th Cir. 2016). To establish plain error, a defendant must show that an error exists that is plain and affects his substantial rights. *United States v. Hughes*, 840 F.3d 1368, 1384 (11th Cir. 2016). If these requirements are satisfied, we may exercise our discretion to correct the error, but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 1384-85. An error is plain if it is clear or obvious. *United States v. DiFalco*, 837 F.3d 1207, 1221 (11th Cir. 2016).

Absent specific circumstances, a calculation of the guideline range for an offense of trafficking in controlled substances begins with a determination of the quantity of controlled substances involved. *See* U.S.S.G. § 2D1.1(a), (c); *see also id.* § 2D1.1, comment. (n. 7) (stating that quantities are added together where there are multiple transactions or drug types).

The guideline range in a case involving jointly undertaken criminal activity is based on both the defendant's own acts and acts of others that occurred during the commission of the offense and were "(i) within the scope of the jointly

undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1). Defining the scope of the criminal activity for a particular defendant involves determining "the scope of the specific conduct and objectives embraced by the defendant's agreement" to participate in the activity. *Id.* § 1B1.3, comment. (n. 3(B)). When the scope of a defendant's participation in a conspiracy is established, a court then determines the quantities of controlled substances reasonably foreseeable in connection with that level of participation. *United States v. Hansley*, 54 F.3d 709, 714 (11th Cir. 1995).

Upon review of the record and consideration of the parties' briefs, we see no reversible error.

The district court did not clearly err by basing Williams's sentences on quantities of controlled substances that his co-conspirators sold while he was in custody: the sales were within the scope of his agreement to participate in the conspiracy, furthered the conspiracy, and were reasonably foreseeable in connection with the conspiracy. *See* U.S.S.G. § 1B1.3(a)(1)(B). Williams participated in sales of controlled substances both before and after he was in custody. The record does not reflect that he withdrew from the conspiracy while he was in custody (for approximately two months), and he resumed his participation in the conspiracy shortly after being released from custody. That his

4

co-conspirators would continue to sell controlled substances while he was absent was reasonably foreseeable.

Williams argues to us that his co-conspirators expanded the scope of the conspiracy by selling larger quantities of controlled substances while he was in custody, but he did not raise this argument to the district court. The district court did not plainly err by basing Williams's sentences on the larger quantities because it is not clear or obvious from the record that Williams had agreed to participate in sales of only limited quantities of controlled substances.

## II.

A factual finding made for sentencing purposes on possession of a firearm is reviewed for clear error. *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). The base offense level for an offense of trafficking in controlled substances is increased by two levels if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The enhancement is "applied whenever a firearm is possessed during conduct relevant to the offense of conviction." *United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006).

A co-conspirator's possession of a firearm may be attributed to a defendant for the purpose of applying the enhancement if the firearm possession "was

reasonably foreseeable by the defendant, occurred while he was a member of the conspiracy, and was in furtherance of the conspiracy." *United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010). "There is a frequent and overpowering connection between the use of firearms and narcotics traffic," and thus it may be "reasonably foreseeable that a co-conspirator would possess a firearm where the conspiracy involved trafficking in lucrative and illegal drugs." *Pham*, 463 F.3d at 1246.

The district court did not clearly err by applying the two-level firearm enhancement. Williams argues to us that it was not reasonably foreseeable that one of his co-conspirators would possess a firearm. He also argues that the record does not reflect that the co-conspirator possessed the firearm to further the conspiracy. But Williams did not raise either of these arguments to the district court. The district court did not plainly err by applying the firearm enhancement based on the co-conspirator's possession of a firearm during a meeting where a confidential informant attempted to purchase a controlled substance from Williams. That one of the co-conspirators would possess a firearm to protect the co-conspirators, their inventory of controlled substances, and their profits was reasonably foreseeable.

**AFFIRMED.**

6