[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11800

Non-Argument Calendar

_____

D.C. Docket No. 0:16-cr-60213-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

QUINCEY LOCKHART,
a.k.a. Slap,
CARL WILLIAMS,
a.k.a. Foot,

Defendants - Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(May 4, 2018)

Before MARCUS, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

Quincey Lockhart appeals his 180-month sentence imposed after a jury found him guilty of one count of conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. § 846, and five counts of possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  Carl Williams likewise appeals his 97-month sentence imposed after a jury found him guilty of one count of conspiracy to possess a controlled substance with intent to distribute and one count of possession of a controlled substance with intent to distribute.  As to their convictions, Lockhart and Williams argue (1) that the district court abused its discretion by admitting evidence of prior narcotics convictions and (2) that the government failed to introduce sufficient evidence to support their conspiracy convictions.  As to their sentences, Lockhart and Williams contend that the district court erred in applying (1) a two-level enhancement for possessing a dangerous weapon and (2) a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance.

After careful review, and finding no error, we affirm.  The facts are known to the parties; we will not repeat them here.

# I

We review a district court's evidentiary rulings for abuse of discretion. *United States v. Kahn*, 794 F.3d 1288, 1293 (11th Cir. 2015).  Where a party

asserts errors for the first time on appeal, we will not reverse "unless they constitute 'plain error' amounting to a miscarriage of justice seriously affecting the fairness, integrity, or public reputation of the proceeding." *United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir. 2004).

Federal Rule of Evidence 404(b) forbids the admission of evidence of "a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Such evidence, however, may be admissible for other purposes, such as proof of intent and absence of mistake. *Id*. To be admissible, Rule 404(b) evidence must (1) be relevant to an issue other than the defendant's character, (2) be sufficiently proven to allow a jury to find that the defendant committed the extrinsic act, and (3) possess probative value that is not substantially outweighed by its undue prejudice under Fed. R. Evid. 403. *United States v. Barron-Soto*, 820 F.3d 409, 417 (11th Cir. 2016).

Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United*

3

*States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (quotation marks omitted). In reviewing issues under Rule 403, we "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *United States v. Edouard*, 485 F.3d 1324, 1344 n.8 (11th Cir. 2007) (quotation marks omitted).

Relevant circumstances for determining if the danger of unfair prejudice substantially outweighs the probative value of Rule 404(b) evidence include whether the defendant would contest the issue of intent, the overall similarity of the extrinsic act and the charged offense, and the temporal remoteness between the extrinsic act and the charged offense. *United States v. Jernigan*, 341 F.3d 1273, 1282 (11th Cir. 2003). We have held that jury instructions regarding the proper use of Rule 404(b) evidence can minimize the evidence's prejudicial impact. *United States v. Brown*, 665 F.3d 1239, 1247 (11th Cir. 2011).

## A

As an initial matter, both Lockhart and Williams assert for the first time on appeal that the Rule 404(b) evidence should have been excluded because it was too remote in time to be relevant and misled the jury into believing that they had been involved in drug crime for an extended period of time. Because the defendants raise the remoteness issue for the first time on appeal, we review it only for plain error. The defendants have not demonstrated that it was plain error to admit

4

evidence of their prior convictions on the ground that they were too remote in time. We have held that inquiries into temporal remoteness are fact-specific. *United States v. Matthews*, 431 F.3d 1296, 1311 (11th Cir. 2005).   Here, Lockhart and Williams assert that because their prior convictions were approximately ten and six years old, respectfully, they were too remote.  But we have upheld the admission of evidence even more remote in time than the defendants' prior convictions.  *See id.* at 1312 (citing *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995)). Accordingly, the district court here did not plainly err in admitting the evidence of other acts under the theory that they were too remote in time to be probative.

**B**

More generally, the district court did not abuse its discretion by allowing Rule 404(b) evidence of the defendants' prior convictions.  Because both defendants pleaded not guilty to the charges against them, including the conspiracy charge, their intent became a material issue.  *Barron-Soto*, 820 F.3d at 417.  Both defendants acknowledge that a "mere presence" defense puts knowledge and intent at issue.  Furthermore, both defendants' prior convictions were for conduct similar to that charged in the current case.  Finally, the district court here explained to the jury how to properly use Rule 404(b) evidence following the testimony of each witness testifying about the prior acts and again during the jury instructions, which

5

we have held can minimize any prejudicial impact of the evidence. *Brown*, 665 F.3d at 1247.

## II

We ordinarily review the sufficiency of the evidence *de novo*, viewing the record in the light most favorable to the government and drawing all reasonable inferences in favor of the verdict. *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014). We will uphold the conviction "unless a rational fact-finder could not have found the defendant guilty under any reasonable construction of the evidence." *Id.* (quotation omitted).

In reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in its favor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Martinez*, 763 F.2d 1297, 1302 (11th Cir. 1985) (quotation marks omitted).

6

To be guilty of conspiracy to possess a controlled substance with intent to distribute, the government must prove (1) that a conspiracy or agreement existed between the defendants or the defendant and others, (2) that the defendant knew the essential object of the conspiracy to possess a controlled substance with intent to distribute, and (3) that defendant knowingly and voluntarily participated in the conspiracy. 21 U.S.C. § 846; *United States v. Westry*, 524 F.3d 1198, 1212 (11th Cir. 2008).

The district court did not err in allowing the conspiracy charges against Lockhart and Williams to go to the jury. After viewing the evidence in the light most favorable to the government, and with all reasonable inferences drawn in its favor, it is possible that the jury could have found beyond a reasonable doubt that both defendants engaged in a conspiracy to possess a controlled substance with intent to distribute. For instance, the government presented evidence at trial—

- that Williams and Lockhart worked together, with Williams acting as security for Lockhart;

- that an undercover agent informed Williams that he wanted to "re-up" and then later purchased those drugs from Lockhart;

- that on at least one occasion, Williams stated "we have that good too," indicating that he could also sell an undercover agent marijuana;

- that Williams refused to sell an undercover agent a gun, stating, "I can't sell that. That's our only one"; and

7

- that on at least one occasion, Lockhart's and Williams's co-defendant, Marquis Brickley, acted as a go-between for Lockhart and an undercover agent, passing the drugs and money between the two.

Viewing the evidence in the light most favorable to the government—and the verdict—it is not improbable that the jury found that both defendants were engaged in a conspiracy to possess a controlled substance with the intent to distribute. *Spoerke*, 568 F.3d at 1244.

## III

We review a district court's interpretation and application of the Sentencing Guidelines *de novo* and its factual findings for clear error. *United States v. Smith*, 480 F.3d 1277, 1278 (11th Cir. 2007). Factual findings are clearly erroneous only when the appellate court "is left with a definite and firm conviction that a mistake has been committed." *United States v. Barrington*, 648 F.3d 1178, 1195 (11th Cir. 2011) (quotation marks omitted). There is no clear error in cases where the record supports the district court's findings. *United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002).

## A

Pursuant to U.S.S.G. § 2D1.1(b)(1), if the defendant possessed a dangerous weapon (including a firearm) during the commission of the charged offense the base offense level is increased by two levels. U.S.S.G. § 2D1.1(b)(1). The

8

guideline commentary states that "the enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, comment. (n. 11(A)).

The government must show that "the firearm was present at the site of the charged conduct" or that "the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). Although "'[e]xperience on the trial and appellate benches has taught that substantial dealers in narcotics keep firearms on their premises as tools of the trade,' the mere fact that a drug offender possesses a firearm does not necessarily give rise to the firearms enhancement." *Id.* at 1221 (citation omitted). Rather, the government must show some nexus, beyond mere possession, between the firearms and the drug crime. *Id.* Once the government meets this burden, however, the evidentiary burden shifts to the defendant to demonstrate that a connection between the weapon and the offense was "clearly improbable." *Id.* at 1220 (quotation marks omitted).

Critically here, we have held that the enhancement may be applied when the firearm is possessed by a co-conspirator. *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir. 2005). In that circumstance, "the government must prove by a preponderance of the evidence: (1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the

9

defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Id.*

The district court did not err in applying § 2D1.1(b)(1)'s two-level enhancement for possession of a dangerous weapon. Both defendants assert that because the jury returned not guilty verdicts as to their own possession-of-a-firearm charges, and because the government failed to introduce independent evidence that either personally possessed a weapon, they cannot be subject to the enhancement. That is incorrect. As this Court held in *Fields*, a defendant can be subject to the two-level enhancement if the government proves that a co-conspirator possessed a weapon during the conduct that underlies the charged offense. 408 F.3d at 1359. As the district court here concluded during Williams's sentencing hearing, and then reiterated during Lockhart's hearing, *Fields* is applicable to this case. In fact, both defendants concede that their co-defendant Brickley possessed a firearm during the commission of the charged offenses. The government presented sufficient evidence to prove (1) that the firearm was present at the site of the offenses and (2) that the gun was important to Brickley and Williams, in that they refused to sell it to the undercover because it was their "only one." The government therefore sufficiently proved that the gun was both present at the site of the charged conduct and that there was a nexus between the gun and the charged offenses. *Stallings*, 463 F.3d at 1220–21. The burden then shifted to

10

Lockhart and Williams to demonstrate that the connection between the weapon and offense was "clearly improbable," which they failed to do. *Id*. at 1220. Accordingly, application of the two-level enhancement for possession of a dangerous weapon was not improper.

**B**

Pursuant to U.S.S.G. § 2D1.1(b)(12), "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance" a two-level enhancement applies. U.S.S.G. § 2D1.1(b)(12). The commentary states that—

> Among the factors the court should consider in determining whether the defendant 'maintained' the premises are (A) whether the defendant held a possessory interest in (*e.g.*, owner or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

> Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principle uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises. In making this determination, the court should consider how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes.

U.S.S.G. § 2D1.1(b)(12), comment. (n. 17). We recently upheld the application of a two-level enhancement under § 2D1.1(b)(12) where (1) one of the primary

purposes of the defendant's barbershop salon was the distribution of drugs and (2) multiple witnesses saw tools of the drug trade and were offered drugs for purchase on the premises.  *United States v. George*, 872 F.3d 1197, 1206 (11th Cir. 2017). In *George*, we held, alternatively, that the defendant's apartment could be used for the two-level enhancement where a witness saw tools of the trade and watched a narcotics purchase take place there, despite the defendant's insistence that he lived in the apartment and there was only one instance of drugs being purchased there. *Id.*  Applying a "totality of the circumstances" approach, we held that "a premises can have more than one primary use, so long as the drug activity is more than incidental or collateral."  *Id.* at 1206 (quotation marks omitted).

Here, the district court did not err in applying U.S.S.G. § 2D1.1(b)(12)'s two-level enhancement.  The court found that the apartment in question was a "crack house" with the primary purpose of manufacturing, selling, and storing controlled substances.  Lockhart and Williams both assert that because the apartment was not their residence, and because the government failed to prove that they had done repairs or supplied food for the apartment, the totality-of-the-circumstances indicates that the enhancement does not apply.  But a possessory interest is only one factor that bears on the application of the enhancement. U.S.S.G. § 2D1.1(b)(12), comment. (n. 17).  Other facts here provide ample support for the district court's application.  As to Lockhart, for instance, he invited

12

the undercover agent to the apartment to sell him narcotics, he instructed the agent on at least one occasion to leave the apartment and wait outside, and he was allowed in the kitchen when others were not. As to Williams, the agent testified that he was sleeping at the apartment and that when the warrant was executed, it was read to Williams. While it may be true (or at least unclear) that Lockhart and Williams did not rent or lease the apartment, they clearly frequented the apartment for the purpose of selling narcotics and that purpose was not incidental or collateral to their presence there. *George*, 872 F.3d at 1206. Accordingly, the district court did not err in applying the two-level enhancement.

**AFFIRMED.**